IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-621-BO-BM

| | | |
|---|---|---|
| DARIUS DANZY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CSX TRANSPORTATION INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on *pro se* plaintiff's motion for protective order [DE-29] and motion to quash the subpoena issued to 84 Lumber [DE-45][1] ("motion to quash") (together, with [DE-29], the "subpoena motions") in plaintiff's case against defendant CSX Transportation Inc. ("CSX" or "defendant"). CSX filed a response in opposition [DE-31], with exhibits [DE-31-1 to 31-5], to which plaintiff filed a reply [DE-33].

In his reply [DE-33], plaintiff references five exhibits (Exhibits A through E), and appears to indicate, through placeholder pages (*id.* at 8-11),[2] that Exhibits A-E would be filed at a later date. *See generally id.* Additionally, plaintiff's reply appears to include (i) a "motion to amend IFP application" (*id.* at 3-4) and (ii) a "request for appointment of [a] special master" to "resolve complex [Substance Abuse and Mental Health Services Administration ("SAMHSA")] compliance issues" (*id.* at 5).

This matter is also before the court on plaintiff's (i) "motion for extension of time to

---

[1] As reflected in the docket of this case, the court originally construed plaintiff's motion to quash as an exhibit to plaintiff's motion for protective order [DE-29]. Once plaintiff's intent was discerned, plaintiff's motion to quash was redocketed at [DE-45].

[2] The placeholders for Exhibits A-E are entitled: "A. Tax delinquency notice"; "B. Amended IFP Affidavit"; "C. Property Inspection Report"; "D. CRL Urine Test Results & MRO Report"; "E. SAMHSA 2020 Proposed Guidelines Excerpt." [DE-33] at 6, 8-11.

provide response motions Exhibits A, B, and C" [DE-32] ("plaintiff's first motion for extension of time")[3] and (ii) "motion for extension of time to provide quash response motions Exhibits A, B, and C, and [to] extend time to [rebut] motion to dismiss" [DE-40] ("second motion for extension of time").[4]  Plaintiff attaches three exhibits [DE-40-1 to 40-3] to his second motion for extension of time.

The above motions were referred to the undersigned for disposition.  *See* Text Orders on April 28, 2025, and March 5, 2026.  For the reasons stated below, plaintiff's first motion for extension of time [DE-32] is GRANTED; second motion for extension of time [DE-40] is GRANTED; plaintiff's motion to amend his IFP application [DE-33] is DENIED WITHOUT PREJUDICE; and plaintiff's request for a special master [DE-33] is DENIED.

Also for the reasons stated below, plaintiff's motion for protective order [DE-29] and motion to quash the subpoena issued to 84 Lumber [DE-45] are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Defendant is a corporation operating rail-based transportation services in the eastern United States and parts of Canada.  [DE-9] at ¶5; [DE-1-1] at ¶5.  Plaintiff was extended an offer of employment by defendant, contingent upon plaintiff passing a medical exam and drug screen. [DE-1-1] at ¶11; [DE-9] at ¶11.  On or about April 28, 2023, plaintiff's underarm hair follicle and urine sample were collected to be tested for Cocaine Metabolites, Opi-Cod/Mor, Phencyclidine (PCP), Amphetamines, Marijuana (THC Metabolite) and Benzodiazepines.  [DE-1-1] at ¶¶11-12;

---

[3] Plaintiff's first motion for extension of time appears to provide placeholders for three exhibits "A. Tax delinquency notice"; "B. Amended IFP Affidavit"; and "C. Property Inspection Report."  [DE-32] at 6-8.

[4] Plaintiff's second motion for extension of time [DE-40] also seeks an extension of time to respond to defendant's motion to dismiss [DE-37].  Defendant's motion to dismiss is not currently referred to, or before, the undersigned and, will be addressed by separate order.

[DE-9] at ¶¶11-12. Plaintiff's hair follicle was tested by Psychemedics Corporation, which resulted in a reported positive result for cocaine on May 2, 2023. [DE-1-1] at ¶13; [DE-9] at ¶13. On May 8, 2023, defendant sent plaintiff an email rescinding plaintiff's offer of employment "because plaintiff failed to pass the . . . drug screen." [DE-9] at ¶14.

On October 30, 2023, plaintiff filed this suit against defendant under Title VII of the Civil Rights Act of 1964 alleging "unlawful employment practices on the basis of race." [DE-1-1] at 2. Plaintiff alleges that defendant discriminated against him because of his race as a "Black-African American" by subjecting him to narcotics testing that disparately impacts the "class of Black African Americans" due to the unreliable and inaccurate method of hair follicle testing used by defendant in its pre-employment drug screening. *Id*.

On October 30, 2023, plaintiff filed an application to proceed *in forma pauperis* [DE-2], in which he indicated that his average monthly income for the previous 12 months was $0 and his expected monthly income for the following month was $0. *Id.* at 1. When asked to list his employment history for the previous two years, plaintiff only provides "Huttig Building Supply," with dates of employment from April 2021 to October 2021. *Id.* at 2. He also states that his home value is $0 and that he spends no money on rent or home-mortgage payments. *Id.* at 3-4. Plaintiff also claims that he does not expect any major changes to his monthly income or expenses or in his assets or liabilities during the next 12 months. *Id.* at 5. He signed an affidavit under penalty of perjury in support of his application to proceed *in forma pauperis* that "the information [in the *in forma pauperis* application] is true and [plaintiff] understand[s] that a false statement may result in a dismissal of [his] claims." *Id.* at 1. On June 11, 2024, this court granted plaintiff's application to proceed *in forma pauperis*, and found plaintiff's complaint sufficient to survive a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). [DE-5].

3

A joint Rule 26(f) report was filed [DE-14] and approved by this court's scheduling order [DE-16] with discovery commencing on August 28, 2024. [DE-14] at 2. Defendant served written discovery requests seeking information and documents relating to plaintiff's employment history. [DE-31] at 2. An interrogatory asked plaintiff about his current employment, to which plaintiff allegedly responded, "[p]laintiff continues to seek employment and may update this response as additional efforts are made." *Id.* (citing [DE-31-1] at 14). A request for admission sought that plaintiff "[a]dmit [he is] employed by 84 Lumber located at 6301 Wake Forest Road, Raleigh, North Carolina 27616," to which plaintiff allegedly responded:

> [p]laintiff objects to this request on the grounds that it is compound, as it improperly combines multiple factual assertions in one request. Plaintiff further objects on the grounds that it seeks to elicit a legal conclusion regarding employment status and location. Without waiving these objections, [p]laintiff denies being employed by 84 Lumber at the specified address.

*Id.* (citing [DE-31-2] at 3-4).

Defendant represents that it served a subpoena on 84 Lumber on April 11, 2025 "to resolve some . . . discovery deficiencies without involving the court." [DE-31] at 2-3 (citing [DE-31-4] at 8). Plaintiff filed the instant motion to quash [DE-45] and motion for protective order [DE-29] on April 11, 2025, opposing defendant's subpoena to 84 Lumber.

### PLAINTIFF'S MOTIONS FOR EXTENSION OF TIME [DE-32; -40]

On May 2, 2025, plaintiff filed a motion for extension of time to file exhibits in support of his subpoena motions. [DE-32] at 1. Specifically, plaintiff seeks to file "Exhibit A: Edgecombe County Tax Delinquency Notice"; "Exhibit B: Amended IFP Affidavit; and "Exhibit C: Property Inspection Report." [DE-32] at 2. Defendant filed a notice of non-opposition [DE-39] to plaintiffs first motion for extension of time [DE-32]. Accordingly, plaintiff's first motion for extension of time [DE-32] is GRANTED.

4

On June 3, 2025, plaintiff filed his second motion for extension of time [DE-40] seeking an extension until June 23, 2025, to submit the exhibits in support of his motion to quash and motion to dismiss. [DE-40]. Defendant did not file a response. As plaintiff's second motion for extension of time is unopposed and the court does not perceive any prejudice to defendant or this court by such an extension, plaintiff's second motion for extension of time [DE-40] is GRANTED.

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER [DE-29] AND**
**MOTION TO QUASH [DE-45]**

**I.      Applicable Legal Principles**

Rule 45 of the Federal Rules of Civil Procedure permits a party to issue subpoenas for the production of documents and other things from nonparties. *See* Fed. R. Civ. P. 45(a)(1)(C); Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."); *In re Subpoena to Robert Kochan*, No. 5:07-MC-44-BR, 2007 WL 4208555, at \*4 (E.D.N.C. 26 Nov. 2007) ("Rule 45 expressly permits a party to issue discovery subpoenas to a nonparty for documents and things in the nonparty's possession, custody, or control.") (citing Fed. R. Civ. P. 45(a)(1)(C)). A nonparty served with a subpoena may respond as requested, serve objections, or timely file a motion to quash or modify the subpoena. Fed. R. Civ. P. 45(d).

"Rule 45 adopts the standard codified in Rule 26" in determining what is discoverable. *Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 453 (E.D.N.C. 2005); *see also Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed, taking into consideration facts peculiar to their status as a non-party, those factors are co-extensive with the general rules

5

governing all discovery that are set forth in Rule 26."). Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The rules of discovery, including Rule 26, are to be given a broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. Sep. 27, 2000). While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (quoting *Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

The court is also authorized to impose appropriate limitations on discovery. Rule 26 provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such orders may prescribe, among other measures, "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id.* (c)(1)(A), (c)(1)(D). A party moving for a protective order has the burden of making a particularized showing of why discovery should be denied, and conclusory or generalized

6

statements in the motion fail to meet this burden.  *Smith v. United Salt Co.*, No. 1:08CV00053, 2009 WL 2929343, at *5 (W.D. Va. Sept. 9, 2009).

Generally, a party lacks standing to challenge a subpoena issued to a nonparty.  *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 287 F.R.D. 377, 382 (S.D. W. Va. July 12, 2012). Standing may exist, however, where the party claims some personal right or privilege with respect to the documents sought.  *Jason's Enter., Inc. v. Gen. Accident Ins. Co. of Am.,* Nos. 95-2553, 95-2554, 1996 WL 346515, at *5 (4th Cir. June 25, 1996); *see also* 9A Charles A. Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 2459 ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").  The burden of showing that a personal right or privilege exists rests on the party claiming it.  *Spilker v. Medtronic, Inc.*, No. 4:13-CV-76-H, 2014 WL 4760292, at *2 (E.D.N.C. Sept. 24, 2014) (stating that the party asserting a personal right or privilege in documents sought from nonparties bears the burden of demonstrating such privilege or right is applicable); *see also Papanicolas v. Project Execution & Control Consulting, LLC*, No. CIV.A. CBD-12-1579, 2015 WL 1242755, at *1 (D. Md. Mar. 17, 2015) (noting that "'[t]he burden of proving that a subpoena is oppressive is on the party moving to quash'") (quoting *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012)).

## II.     Discussion

On April 10, 2025, defendant CSX served a subpoena on 84 Lumber seeking information and documents relating to plaintiff's employment history.  [DE-31] at 2.  On April 11, 2025, plaintiff filed the instant motions for protective order and to quash the subpoena on 84 Lumber in its entirety.  [DE-29]; [DE-45].

### A. Plaintiff's Motion to Quash [DE-29]

There is significant overlap between plaintiff's arguments in his motion for protective order [DE-29] and motion to quash [DE-45]. Defendant argues, *inter alia*, that plaintiff's motion to quash should be denied because plaintiff lacks standing to pursue a motion to quash on a non-party. [DE-31] at 3.

The court need not determine whether plaintiff has standing for a motion to quash the subpoena on a third-party [DE-45], because plaintiff has also filed his motion for a protective order [DE-29], which this court has repeatedly found enables it to consider the merits of such a motion. *See U.S. Equal Emp. Opportunity Comm'n v. Bojangles' Restaurants, Inc.*, No. 5:16-CV-654-BO, 2017 WL 2889493, at *4 (E.D.N.C. July 6, 2017) ("Even if plaintiff were deemed not to have standing to challenge the subpoena, plaintiff has also moved for a protective order, permitting the court order to consider its position on the merits."); *CTB, Inc. v. Hog Slat, Inc.*, No. 7:14-CV-157-D, 2016 WL 1244998, at *5 (E.D.N.C. Mar. 23, 2016) ("But even if CTB were deemed not to have standing to challenge the subpoenas, the court could construe CTB's motion as one for a protective order to enable it to consider CTB's motion on the merits.").

The court will therefore consider any distinct arguments raised in plaintiff's motion to quash [DE-45] in the context of plaintiff's motion for protective order [DE-29] below.

### B. Plaintiff's Motion for Protective Order [DE-29]

On April 11, 2025, plaintiff filed his motion for a protective order. [DE-29]. In the motion, plaintiff acknowledges that as of the filing of that motion, 84 Lumber was "[p]laintiff's current employer." *Id.* at 1. Plaintiff claims that the subpoena served on 84 Lumber (i) seeks irrelevant information ([DE-29] at 2) and is "overly broad" ([DE-45] at 2), (ii) is a privacy violation and threatens plaintiff's livelihood ([DE-29] at 2), and that (iii) CSX's conduct is "harassing" and

8

"imposes undue burden" (*id.*).  Plaintiff argues that requiring 84 Lumber "to produce years of records for no legitimate purpose is oppressive and violates [Federal Rule of Civil Procedure] 26(b)(2)(C)(iii)." *Id.*

Plaintiff requests that this court (a) issue a protective order prohibiting CSX from (i) "[s]eeking discovery related to [p]laintiff's employment with 84 Lumber or any entity unrelated to this lawsuit" and (ii) "[i]ssuing subpoenas for irrelevant personal or employment records"; and (b) award plaintiff costs and fees "incurred in opposing CSX's abusive tactics." *Id*. at 3.

In response, defendant argues that plaintiff has not shown good cause for the protective order.  [DE-31] at 5.  Defendant contends that the subpoena will produce relevant, non-confidential, and necessary information related to its defense.  [DE-31] at 5-10.

### 1.  Relevance and overbreadth

Plaintiff contends that this action challenges "racially discriminatory hair follicle testing" and alleges that the subpoena "does not request narcotic testing information."  [DE-29] at 2. Plaintiff argues that defendant "has not shown how 84 Lumber's records relate to its defense" and, therefore, defendant's subpoena is overly broad and not relevant under Fed. R. Civ. P. 26(b)(1). *Id.*

Defendant argues that plaintiff's employment history is relevant to understand (1) plaintiff's employment opportunities and performance after defendant rescinded its offer of employment; (2) plaintiff's "claims against other employers"; and (3) plaintiff's damages and the steps plaintiff took to mitigate those damages.  [DE-31] at 5-7.  Defendant's subpoena demands the production of:

> applications for employment; dates of employment; performance evaluations; written discipline, including but not limited to verbal or non-verbal warnings; promotions; demotions; job descriptions; payroll and compensation records;

complaints; certifications or other related training for operation of personal vehicles, company vehicles, or heavy machinery (*e.g.* forklifts) and any related insurance for the same.

[DE-31] at 2-3.

This court has found that "prior and subsequent employment history is relevant to employment discrimination claims, including damages." *Koukuntla v. Toll Bros.*, No. 5:23-CV-701-BO, 2025 WL 842257, at *3 (E.D.N.C. Mar. 18, 2025). Yet the court does not find that all the information defendant seeks is relevant to its intended purported use. *See Zajac v. Red Wing, LLC*, No. CV 2:16-1856-PMD, 2018 WL 9989662, at *4 (D.S.C. Feb. 27, 2018) (granting plaintiff's motion to quash and for protective order where the subpoena request was "over[ly] broad and include[d] material and information irrelevant to the [d]efendant's stated purpose for seeking th[ose] records.").

Relevance has been "broadly construed to encompass 'any possibility that the information sought may be relevant to the claim or defense of any party.'" *Sheffield Fin. LLC*, 2007 WL 1726560, at *3 (citations omitted). The court credits defendant's argument that plaintiff's "applications for employment; dates of employment; . . . job descriptions; payroll and compensation records; . . . certifications or other related training for operation of personal vehicles, company vehicles, or heavy machinery (e.g. forklifts) and any related insurance for the same" are relevant to defendant's affirmative defense related to plaintiff's mitigation of damages. *See* [DE-31] at 2-3.

Yet defendant does not explain how "[p]laintiff's employment . . . performance after [d]efendant rescinded its offer of employment [and p]laintiff's claims against other employers" are relevant to any of defendant's claims or defenses. *See id.* at 6; *cf. EEOC v. Tex. Roadhouse, Inc.*, 303 F.R.D. 1, 3 (D. Mass. 2014) ("[T]he factual issue at trial will be what [defendant] knew

10

about the potential employee at the time of the alleged discrimination, not whether shortcomings surfaced at subsequent jobs.").  Accordingly, defendant fails to demonstrate how production of plaintiff's performance evaluations, written discipline, promotions, demotions, and complaints would be relevant discovery related to its affirmative defense of plaintiff's mitigation of damages. *Cf. Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (finding defendant's subpoenas on plaintiff's former employers not limited to seeking only those documents relevant to plaintiff's action and, therefore, overly broad); *Epstein v. Town of Bluffton*, No. CV 9:19-2251-DCN-BM, 2019 WL 13109597, at *3 (D.S.C. Nov. 5, 2019) (finding defendant failed to make a showing that it is entitled to unfettered access to plaintiff's entire personnel file and limiting defendant's subpoena requests).

Accordingly, the undersigned finds that only documents and information related to plaintiff's mitigation of damages is relevant discovery in the instant subpoena.[5]  Accordingly, plaintiff's motion for protective order is GRANTED IN PART and DENIED IN PART.  Defendant may only subpoena 84 Lumber for (i) applications for employment; (ii) dates of employment; (iii) job descriptions; and (iv) payroll and compensation records; and (v) certifications or other related training for operation of personal vehicles, company vehicles, or heavy machinery (*e.g.*, forklifts) and any related insurance for the same.[6]  *See* [DE-31] at 2-3.

**2.     Privacy concerns**

Plaintiff argues that defendant's subpoena to 84 Lumber "could prejudice 84 Lumber against [p]laintiff, threatening his previous good standing with the company and any future

---

[5] To be clear, this finding is not all encompassing of any discovery issue or relevancy not before the court in the instant motion, or not raised in either party's briefing.

[6] The court finds that certifications and training that plaintiff had prior to working for subsequent employers is relevant to his earnings potential and mitigation of damages.

11

endeavors with the company." [DE-45] at 3. Plaintiff put his future earnings at issue when he filed the instant lawsuit seeking "compensation for past and future pecuniary losses resulting from the unlawful practices." *See* [DE-1-1] at 13; *see also Weaver v. Evans*, Case No. 97-1138-FGT, 1997 U.S. Dist. LEXIS 21750, at *4 (D. Kan. Dec. 9, 1997) ("[W]hatever privacy concerns the plaintiff may have have been waived when she filed a lawsuit and claimed lost wages in the past and lost wages in the future.").

Plaintiff has not alleged how the substance or the form of the subpoena ([DE-31-3] at 9) prejudices his employment. Moreover, as the parties appear to agree that the subpoena has already been served (*see* [DE-29] at 1; [DE-31] at 2), plaintiff does not explain how he will face any additional prejudice by 84 Lumber responding in accordance with the court's limitations herein.

### 3. Harassment and undue burden

Plaintiff claims that CSX's conduct is "harassing" and "imposes undue burden." [DE-29] at 2. Having already found the production of documents regarding plaintiff's wages and efforts to mitigate its damages to be relevant for the reasons discussed above, the court cannot discern any "annoyance, embarrassment, oppression, or undue burden or expense" (Fed. R. Civ. P. 26(c)(1)) that plaintiff will suffer as a result of defendant's discovery requests once tailored as provided above. Moreover, as the subpoena is directed at 84 Lumber, who has filed no objection to the subpoena as of the date of this order, plaintiff does not have standing to assert harassment or undue burden on their behalf. *See United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.").

Plaintiff appears to be arguing that disclosure of his personnel file, including any disciplinary record, represents harassment of him. *See* [DE-45] at 4 (claiming that defendant is

12

seeking to use this subpoena to "intimidate [p]laintiff and improperly scrutinize his unrelated work history").

Yet the court has excluded such requests from the information defendant may request from 84 Lumber, as provided herein. Accordingly, plaintiff has demonstrated no reason to prevent the subpoena as tailored herein.

Defendant has expressed a willingness "to consider a Protective Order to protect confidential information from use outside of this litigation." [DE-31] at 3. To the extent that one or both parties believe a protective order would be beneficial in this case, the relevant party or parties should file a motion to that effect.

Accordingly, plaintiff's motion for protective order [DE-29] and motion to quash [DE-45] the subpoena issued to 84 Lumber [DE-45] are GRANTED IN PART and DENIED IN PART.

## PLAINTIFF'S MOTION TO AMEND *IN FORMA PAUPERIS* APPLICATION AND REQUEST FOR SPECIAL MASTER [DE-33]

In his reply [DE-33] in support of the motion to quash and motion for protective order, plaintiff moves to amend his *in forma pauperis* application and requests that the court appoint a special master to assist with his claims under the SAMHSA. *See* [DE-33] at 4.

### I. *In forma pauperis* application

As plaintiff's original *in forma pauperis* application is the subject of defendant's motion to dismiss [DE-36], plaintiff's requests and arguments are best considered in the context of that motion. Accordingly, plaintiff's motion to amend his *in forma pauperis* application is DENIED WITHOUT PREJUDICE.

### II. Special Master

Plaintiff cites *In re Nat'l Prescription Opiate Litig.,* 2021 U.S. Dist. LEXIS 230921 (N.D.

Ohio 2021) in support of his argument that "[u]nder FRCP 53, a Special Master is warranted to resolve complex SAMHSA compliance issues." [DE-33] at 5. Federal Rule of Civil Procedure 53 allows the court to appoint a master to (i) perform certain duties with the consent of the parties; (ii) hold certain proceedings in the face of exceptional circumstances or "the need to perform an accounting or resolve a difficult computation of damages"; or (iii) address certain matters "that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1). The court does not find that any of these circumstances exist in this case. Specifically, the court notes that plaintiff does not allege that defendant consented to the appointment of a special master. Additionally, the court has been unable to find any Northern District of Ohio case at the citation provided by plaintiff above. To the extent plaintiff was attempting to cite to *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2021 LX 89716, at *94 (N.D. Ohio Sep. 1, 2021), that case involved multi-district litigation, which greatly exceeds the complexity of plaintiff's Title VII employment discrimination case here. Accordingly, plaintiff's request for a special master is DENIED.

## CONCLUSION

For the reasons provided above, plaintiff's first motion for extension of time [DE-32] is GRANTED; plaintiff's second motion for extension of time [DE-40] is GRANTED; plaintiff's motion for protective order [DE-29] and motion to quash the subpoena issued to 84 Lumber [DE-45] are GRANTED IN PART and DENIED IN PART.

Specifically, IT IS ORDERED that, **within seven days of the date of this order**, defendant may serve an amended subpoena on 84 Lumber seeking plaintiff's (i) applications for employment; (ii) dates of employment; (iii) job descriptions; (iv) payroll and compensation records, and (v) certifications or other related training for operation of personal vehicles, company vehicles, or

14

heavy machinery (*e.g.*, forklifts) and any related insurance for the same.

Also for the reasons set forth above, plaintiff's (i) motion to amend his IFP application [DE-33] is DENIED WITHOUT PREJUDICE and (ii) request for a special master [DE-33] is DENIED.

SO ORDERED, this 9th day of March, 2026.

Brian S. Meyers
United States Magistrate Judge

15