IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-621-BO-BM

DARIUS DANZY,  )
)
Plaintiff,  )
)
v.  )  O R D E R
)
CSX TRANSPORTATION INC.,  )
)
Defendant.  )

This cause comes before the Court on cross motions for summary judgment, among other motions. Plaintiff moved for summary judgment [DE 44], defendant responded [DE 51], and plaintiff replied [DE 57]. Defendant moved for summary judgment [DE 77], plaintiff responded [DE 85], and defendant replied [DE 103]. In this posture, the motions are ripe for ruling. For the following reasons, defendant's motion for summary judgment is granted.

BACKGROUND

Defendant CSX is a corporation operating rail-based freight transportation services in the United States and parts of Canada. [DE 79, ¶ 1]; [DE 86, ¶ 1]. Defendant extended an offer of employment to plaintiff as a freight conductor, contingent on his passing a medical exam and drug test. [DE 79, ¶ 4]; [DE 86, ¶ 4]. The test took place on April 28, 2023. [DE 1-1, ¶ 11]. Defendant outsources its drug testing to Psychemedics Corporation, which tested plaintiff's hair follicle for a panel of drugs. *Id.* at ¶¶ 12–13. On May 8, 2023, defendant CSX notified plaintiff that his offer of employment was rescinded because the hair follicle test returned a positive result for cocaine use. *Id.* at ¶¶ 14–16.

Plaintiff filed this suit on October 30, 2023, alleging "unlawful employment practices on the basis of race" and asserting a disparate impact claim under Title VII. *Id.* at p. 2. Plaintiff alleges

defendant discriminated against him because of his race by subjecting him to narcotics testing that disparately impacts the "class of Black African Americans." *Id.* Plaintiff proceeds on the theory that hair follicle drug testing yields a higher rate of false positive tests for black testers than testers of other races. He denies having used cocaine.

DISCUSSION

**I. Motion for Summary Judgment**

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

2

"A prima facie case for disparate impact under Title VII requires the plaintiff to (1) identify a specific policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Abdur-Rahman v. Wells Fargo Bank N.A.*, No. 3:21-CV-00207-RJC, 2022 WL 481788, at *6 (W.D.N.C. Feb. 16, 2022) (citing *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994–95 (1988); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 277 (4th Cir. 2005) (dissent)). Put differently, to "establish a prima facie case of disparate impact discrimination under Title VII, a plaintiff must 'show that the facially neutral employment practice had a significantly discriminatory impact.'" *Anderson*, 406 F.3d at 265 (citing *Walls v. City of Petersburg,* 895 F.2d 188, 191 (4th Cir.1990)).

The relevant question before the Court, therefore, is not whether plaintiff himself used cocaine, nor whether hair follicle drug screens really do yield a higher rate of false positives in African American testers as plaintiff contends. The question is whether defendant CSX's use of hair follicle drug screenings has had a significantly discriminatory hiring impact on African Americans. Plaintiff has provided no evidence that it does.

Instead, plaintiff has cited various regulations and circuit court precedents. His principal case, *Jones v. City of Boston*, 752 F.3d 38 (1st Cir. 2014), involved a challenge to the Boston Police Department's drug testing practices. The central theory was the same one as here: that hair follicle drug testing disparately impacts black testers. *Id.* at 41. "During the eight years for which the plaintiffs present[ed] data, black officers and cadets tested positive for cocaine approximately 1.3% of the time, while white officers and cadets tested positive just under 0.3% of the time." *Id.* The First Circuit found that this difference was "statistically significant," meaning the court could be "almost certain that the difference in outcomes associated with race over that period cannot be attributed to chance alone." *Id.* at 45.

3

In the present case, by contrast, there is no statistical evidence to rely on. In fact, there is no evidence in the record that black CSX applicants tested positive for cocaine use more frequently than CSX applicants of any other race, or that they are hired less frequently. A prima facie disparate impact claim requires a showing of a disparity. *Abdur-Rahman*, 2022 WL 481788, at *6. Plaintiff has identified the practice he contends is racially discriminatory, but presents no evidence that black CSX applicants are disadvantaged at all—much less that hair follicle drugs screening is the practice that disadvantaged them.

In his reply in support of his motion for summary judgment, plaintiff argued that he "is not required to conduct a new epidemiological study specific to CSX's applicant pool to prove the known discriminatory impact of hair follicle testing. The legal precedent established in *Jones*, coupled with the scientific consensus acknowledged by Federal agencies like SAMHSA, provides the necessary evidentiary foundation." [DE 57, p. 4]. But *Jones* required evidence specific to the pool of Boston police officers. The reason the *Jones* court found plaintiffs had established a prima facie disparate impact claim was *because* they provided statistical evidence and analysis of the Boston Police Department's drug test results, not because the court assumed follicle testing was inherently biased. Indeed, the *Jones* court noted that "[t]he Supreme Court has most recently described a prima facie showing of disparate impact as 'essentially a threshold showing of a significant statistical disparity ... and nothing more.'" *Jones*, 752 F.3d at 46 (citing *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009)).

Other decisions premised on the potential bias of hair follicle drug testing have required evidence—and expressed at least a preference for statistical analysis—indicating that the test results were visibly related to race. In *Green v. City of Philadelphia*, No. 2:19-CV-03156-JDW, 2020 WL 7695956, (E.D. Pa. Dec. 28, 2020), *aff'd,* No. 21-1034, 2022 WL 1165644 (3d Cir. Apr.

4

20, 2022), the Third Circuit considered a disparate impact claim on the same theory: that the Philadelphia Police Department's follicle tests are biased.

The district court in *Green* put the issue succinctly:

> The Philadelphia Police Department ("PPD") tests officers for drug use, as it should. It uses a method, hair testing, that some experts think exposes African American officers to a heightened risk of a false positive on a drug test. Aaron Green was an African American officer who had three hair follicle tests come back positive for cocaine, despite his protestation that he has never used the drug. He might be telling the truth, but that's not the question before the Court. Instead, the issue is whether the PPD's use of hair follicle testing has had a disparate impact on African American officers. On that score, Mr. Green has no evidence at all, statistical or otherwise. Although his expert witness posits that testing creates an elevated risk of a false positive, Mr. Green has not shown that the risk translates into an actual impact. He would have to do so to maintain a disparate impact claim. The Court will therefore grant the City of Philadelphia's summary judgment motion.

*Green*, 2020 WL 7695956, at *1.

Mr. Green, like the plaintiff in the present case, had cited *Jones* to support his disparate impact claim. On appeal, the Third Circuit recognized that "the plaintiff and the Court in *Jones* relied on a sophisticated statistical analysis involving a set p-value and standard deviations. *Id.* at 44–48. Green and his expert, on the other hand, relied simply on raw statistics and generalized opinions about the possible bias in hair tests." *Green v. City of Philadelphia*, No. 21-1034, 2022 WL 1165644, at *3 n.3, (3d Cir. Apr. 20, 2022). In the present case, plaintiff's motion for summary judgment [DE 44] fails for the same infirmity: he provides no evidence at all, not even raw statistics, indicating black CSX applicants suffered a discriminatory impact. Therefore, there is no material fact dispute, and defendant's motion for summary judgment [DE 77] is granted.

## II. Other Motions

Given the Court's grant of summary judgment for the defendant, many other pending motions in this case are denied as moot. Several motions merit brief discussion. In light of the

5

Court's grant of summary judgment, the Court declines to impose sanctions. [DE 43]; [DE 73]; [DE 88]. Plaintiff's motion for leave to amend the complaint [DE 116] sought to add new claims after the close of discovery. Leave to amend a complaint under Fed. R. Civ. P. 15(a) should be freely given when justice so requires. *See Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). "[T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (discussing prejudice to the defendant when plaintiff sought leave to amend the complaint after judgment had been entered; applying the same standard as for similar motions filed before judgment). The present case had progressed substantially before plaintiff filed his motion for leave to amend. Plaintiff had filed his motion for summary judgment and a motion for leave to file a corrected summary judgment motion, defendant had filed a motion to dismiss and a motion for summary judgment, and the extended discovery deadline had passed. The parties had engaged in significant motions practice. Plaintiff fails to show good cause for granting leave to amend, and amendment would be prejudicial to defendant.

Plaintiff moved to compel [DE 49] the production of certain documents and evidence, including "Records of All Hair Follicle/Urine Testing Conducted by CSX[.]" Defendant responded in opposition, explaining that plaintiff never made a discovery request for this information [DE 54, p. 4] and never met to confer with defendant regarding the dispute, *id.* at p. 1. Plaintiff does not claim in his reply that he ever served a discovery request for the drug testing records. Under Fed. R. Civ. P. 37(a)(3)(B), "a party seeking discovery may move for an order compelling an

6

answer, designation, production, or inspection" if the other party "fails to produce documents . . . as requested under Rule 34." Because plaintiff never served CSX with a discovery request, CSX never failed to produce those documents in discovery. Furthermore, before a court can consider a motion to compel, "the parties must meet and confer regarding the discovery requests and attempt in good faith to resolve the discovery dispute without court action." *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 532 (E.D.N.C. 2012), *aff'd,* 551 F. App'x 646 (4th Cir. 2014). While the parties have met to confer about other issues, plaintiff points to no meeting or attempt at meeting to discuss the production of CSX's drug testing records. In any event, plaintiff later abandoned his pursuit of CSX's drug testing records, stating that the "legal precedent established in *Jones*, coupled with the scientific consensus acknowledged by Federal agencies like SAMHSA, provides the necessary evidentiary foundation." [DE 57, p. 4]. The motion to compel production of CSX's drug testing records is therefore denied, and the remainder of the motion to compel is denied as moot.

Plaintiff's other motions, including those for judicial notice or to file supplemental briefing, do not contain any evidence that CSX's drug test results created a disparate impact on black applicants. They are therefore denied as moot.

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment [DE 44] is DENIED and defendant's motion for summary judgment [DE 77] is GRANTED. Plaintiff's motions for sanctions [DE 43]; [DE 73]; [DE 88] are DENIED. Plaintiff's motion for leave to amend the complaint [DE 116] is DENIED. Plaintiff's motion to compel [DE 49] is DENIED IN PART to the extent it seeks to compel production of CSX's drug testing records, and is otherwise DENIED IN PART as MOOT.

7

The other remaining motions are DENIED as MOOT. [DE 36]; [DE 48]; [DE 58]; [DE 60]; [DE 61]; [DE 65]; [DE 66]; [DE 68]; [DE 82]; [DE 92]; [DE 94]; [DE 99]; [DE 107]; [DE 109]; [DE 111]; [DE 113]; [DE 117]; [DE 125]; [DE 132]; [DE 137]; [DE 139]; [DE 147]; [DE 149]; [DE 153]; [DE 154]; [DE 158].

The Clerk is DIRECTED to close the case.

SO ORDERED, this 17 day of March 2026.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8